## EBENEZER WASHBURN *versus* FOURTH PARISH OF WEST SPRINGFIELD.

A public teacher of religion, not ordained over a particular parish or place, but only indefinitely over a large district of country, including, or which may include, a number of parishes or places, cannot maintain an action to recover moneys assessed for the support of public worship. *See post.*

THIS was an *indebitatus assumpsit* for 130 dollars, 20 cents, 6 mills, for money had and received. The plaintiff described himself as follows, *viz.*, " EBENEZER WASHBURN, *clerk and public teacher of the Methodist Episcopal Church at the Fourth Parish in West Springfield;*" and the action was against the inhabitants of that parish.

*Taylor*, for the plaintiff, stated that the plaintiff claimed the sum of money for which the action * was brought, as [ * **33** ] having been paid into the treasury of the parish by divers persons, who attended on his instructions as a public teacher of religion, &c., and as having a right to it by the express provision of the third article of the *bill of rights* in the constitution of this state.

It appeared in evidence that the plaintiff, in Oct. A. D. 1800, began to preach within the limits of the parish aforesaid, and continued to preach there till the month of June then next ensuing, at which time he left it, and returned in the spring of the year 1802; that he usually preached within this parish as often as one Sunday in a month; that his *domicil* was at *Chester*, in this county; that he was appointed and ordained to travel and teach in what the Methodists called the *Pittsfield Circuit*, the extent of which did

not appear, but included a part, at least, of *Berkshire*, *Pittsfield* being in that county; that in April, 1801, the parish granted and assessed a tax on their inhabitants, for the purpose of building a house of public worship for the use of the parish; that divers of the inhabitants of the parish, who usually attended on the plaintiff's instructions as a public teacher as aforesaid, while he preached within the limits of the said parish, and whose taxes in the said assessment amounted to the sum of money demanded by the plaintiff in his *declaration*, and which they had paid into the parish treasury, had procured a certificate of their so attending, in the form prescribed by the 4*th sect.* of an act passed March 4th, 1800, (*stat.* 1799, *c.* 87;) that the same had been produced to the committee of the parish; that the committee had thereupon been required by the several persons aforesaid to order and direct the treasurer of the parish to pay over the amount of those taxes to the plaintiff, and that the plaintiff in September, 1802, had [ * 34 ] demanded the same * of the treasurer, who refused to pay over the same, or any part thereof.

The *Attorney-General,* (*Sullivan,*) for the plaintiff, argued that this evidence was sufficient to enable the plaintiff to maintain the action—that although it had been suggested that money raised for *building houses of public worship* was in no instance to be paid to the public teacher, yet he contended that, in all cases similar to the one now before the Court, the public teacher had a right to demand and receive it. The *constitution* is express, that " *all moneys* paid by the subject to *the support of public worship, and of the public teachers aforesaid,* shall, if he require it, be uniformly applied to the support of the public teacher of his own religious sect or denomination, provided there be any on whose instructions he attends;" money raised for building a *house* of public worship is raised for the *support* of public worship; the person taxed has the same right to direct the application of moneys paid by him for *that* purpose, which he has to direct the application of moneys paid by him to the *support of a public teacher ;* and in both instances the moneys paid are, if required, to be paid over to his teacher. In the case now under consideration, the requisition has been made, and in the manner pointed out by the *act of March* 4, 1800, which in express words includes *moneys raised for the building or repairing houses of public worship*—this *act* is only in affirmance of the constitution, and was made for the purpose of ascertaining the necessary steps to be taken, in order that moneys so raised might be applied according to the *constitutional rights* of the claimant.

The Court, (*Dana,* C. J., *Strong* and *Thatcher,* justices,) without hearing the counsel for the defendants, were of opinion that the

26

evidence was insufficient to support the action—that as the plaintiff had not proved that he was, according to the * rules  [ * **35** ] of even his own religious sect, ordained over any particular parish or society, but only over an indefinite district called the *Pittsfield Circuit*, he had not entitled himself to receive the money claimed. They said that it never could have been the intention of the framers of the *constitution*, upon any reasonable construction of that instrument, to authorize these itinerant preachers, who had never been ordained over a certain specified place or parish, and whose practice it is to travel about and preach occasionally, sometimes in one place, and sometimes in another, perhaps in twenty towns, or a whole county, to bring actions and recover back all the moneys which had been assessed, for the support of the public worship, or of the public teachers of religion, on those persons who professed to be of the religious sect or denomination of such itinerant preacher, and who occasionally attended on his instructions— that if this were allowed, it would have the most direct tendency to subvert all the regular religious societies in the community. .

The plaintiff was nonsuited (1).

NOTE.—Is it not clear, from the *form* of the certificate prescribed in the *4th sect.* of the act of March 4, 1800, (*stat.* 1799, *c.* 87,) above mentioned, that the legislature had the same opinion (as that expressed in this case by the Court) as to the public teacher who *might* have a right to bring an action and recover moneys assessed and paid as aforesaid?

(1) It has since been decided, that an evangelist who has contracted to preach to two societies in different towns, is not entitled to the taxes paid by his hearers for the support of public worship.—*Kendall* vs. *Kingston,* 5 vol. 524; and, also, that no person has a right to receive these taxes who is not a teacher of piety, &c., to an *incorporated* society, 6 vol. 401, *Barnes* vs. *Falmouth.*—Both these points were again resolved, *Turner* vs. *Second Precinct in Brookfield,* 7 vol. 60 —See, also, *ib.* 230, *Lord* vs. *Byfield.* But it is now enacted by *stat.* 1811, *c.* 6, § 1, "That all moneys paid by any citizen of this commonwealth to the support of public worship, or of public teachers of religion, shall, if such citizen require it, be uniformly applied to the support of the public teacher or teachers of his own religious denomination, provided there be any whose instruction he usually attends, *as well when such teacher or teachers is or are the teacher or teachers of an unincorporated as of a corporate religious society,* and it shall be sufficient to entitle any such teacher or teachers of a corporate or unincorporate religious society to receive the same moneys of the town, district, parish, or religious corporation, which shall assess, collect, or receive the sum, *that he be ordained and established, according to the forms and usages of his own religious sect and denomination, although his parochial charges or duties may extend over other religious societies, according to such forms and usages."*—No decision has yet been had to show whether this statute is to be considered as *constitutional,* or whether *its construction is to be restricted* in conformity with constitutional principles.—[Sed vide *Gridley* vs. *Clark,* 2 *Pick.* 403.—*Sumner* vs. *First Parish in Dorchester,* 4 *Pick.* 361. —ED.]